Document Electronically Filed

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

-------------------------------------------------------X

**UNITED STATES OF AMERICA,**


    **-against-**                                       **05-858 (WHW)**

**GHENET M. MESFUN AND
JOSEPH Y. MESFUN,**

                    **Defendant.**

-------------------------------------------------------X

---

## DEFENDANT GHENET M. MESFUN'S BRIEF
## IN SUPPORT OF PRETRIAL MOTIONS

---

**Law Offices Of Stephen Turano**
Stephen Turano, Esq.
401 Greenwich Street, Fifth Floor
New York, New York 10013
Tel: (212) 219-3572
Fax:  (212) 219-8456
Attorney for Defendant
 Ghenet M. Mesfun

Document Electronically Filed

## **INTRODUCTION**

The undersigned respectfully submits this brief in support of defendant Ghenet M. Mesfun's ("Mesfun") pretrial motions.

The Indictment charges Mesfun and her codefendant and husband, Joseph Y. Mesfun, with conspiracy and substantive counts of alien harboring, in violation of 8 U.S.C. § 1324(A)(1)(a)(iii), involuntary servitude, in violation of 18 U.S.C. § 1584, and forced labor, in violation of 18 U.S.C. § 1589. Mesfun was charged alone with two counts of obstruction, in violation of 18 U.S.C. § 1512, and two counts of threats, in violation of 18 U.S.C. § 875.

The following memorandum of law is submitted in support of Mesfun's pretrial motions seeking: (1) immediate production of favorable and impeaching materials; (2) immediate disclosure of the government's witness list; (3) disclosure of the identity of all confidential informants; (4) an order requiring all government agents who participated in the investigation of this matter to preserve their rough notes and reports; (5) early disclosure of Jencks Act materials; (6) a Bill of Particulars; (7) all evidence the government intends to use under Fed.R.Crim.P. 12(b)(4); (8) disclosure of all co-conspirator statements; (9) a hearing to determine the admissibility and audibility of any recorded conversations and the accuracy of any corresponding transcripts; (10) disclosure of any post-conspiracy statements that may be offered at trial against defendants; (11) disclosure of any and all Fed.R.Evid. 404(b) evidence; (12) disclosure of any and all uncharged misconduct or bad acts which the government may seek to introduce at trial; (13) severance of Counts One through Four from Counts Five through Eight; (14) permission to present an insanity defense if appropriate; and (15) permission to file any necessary, additional motions.

1

Document Electronically Filed

## ARGUMENT

## POINT I

## IMMEDIATE PRODUCTION OF FAVORABLE AND IMPEACHING MATERIALS, SUCH THAT THE DEFENSE MAY MAKE REASONABLE INVESTIGATIVE USE OF THESE MATERIALS IS REQUIRED

Mesfun requests that the government disclose all information or material in the possession of the government that is favorable to the defendant on the issue of guilt, which affects the credibility of the governments' witnesses or evidence, or which may reasonably lead to the discovery of further favorable evidence.  This request specifically includes documents, statements, agents' reports, and tangible evidence.

In addition, Mesfun requests the name of any witness who made an arguably favorable statement concerning the defense, including any person who at any time gave a statement that is inconsistent with the allegations set forth in the indictment.  She also requests Giglio material (i.e., all statements or promises, express or implied, made to any government witnesses in exchange for their testimony in this case), and all other information that could arguably be used for the impeachment of any government witnesses.  Further, Mesfun requests that the government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, including testifying officers and agents, for evidence of perjurious conduct or any other dishonesty, or any other material relevant to impeach, or any information that is exculpatory.

Under the doctrine of Brady v. Maryland, the government has the duty to disclose and

2

Document Electronically Filed

produce all evidence that is favorable and material to the accused.  See Brady v. Maryland, 373 U.S. 83 (1963).  In addition, Mesfun is entitled to all material that he might use to impeach the credibility of any government witnesses.  Giglio v. United States, 405 U.S. 150 (1972).

In Brady, the Supreme Court held that – irrespective of good or bad faith – it is a violation of due process for the prosecution to suppress material evidence favorable to a defendant who has requested it.  Accordingly, Brady imposes on the government an affirmative obligation to produce requested evidence that is materially favorable to the accused, either as direct or impeaching evidence. As construed in Giglio, this disclosure obligation also includes information that concerns witness credibility.

The Third Circuit has explained that the "[m]aterials that must be disclosed are those that go [to] the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness."  United States v. Hill, 976 F.2d 132, 134-35 (3$^{d}$ Cir. 1992).  The disclosure obligation also applies whenever the government has actual or constructive knowledge of the exculpatory information.  Consequently, the government is held to a duty to provide material when, despite a lack of actual knowledge, the prosecutor "should have known that the material at issue was in existence."  United States v. Joseph, 996 F.2d 36, 39 (3d Cir. 1993), cert. denied, 114 S.Ct. 357 (1993).  Similarly, a prosecutor is deemed to know that information exists when it is known to the "prosecution team."  United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).

Federal prosecutors routinely ignore the Brady/Bagley mandate by their contention that any material falling under the category of "impeachment," whatever its exculpatory value, need not be disclosed until after the witnesses testify.  In so arguing, they mistakenly contend that the

Document Electronically Filed

Jencks Act, 18 U.S.C. § 3500, somehow supersedes the defendant's Sixth Amendment rights

guaranteed by Brady.

There can be no serious dispute over the proposition that Brady encompasses material

that "might well alter the jury's judgment of the credibility of a significant prosecution witness."

Perkins v. LeFevre, 691 F.2d 616, 619 (2d Cir. 1982), citing Giglio v. United States, 405 U.S.

150, 154 (1972); see also United States v. Chitty, 760 F.2d 425, 428 (2d Cir.), cert. denied, 474

U.S. 945 (1985) ("The Brady rule applies equally to impeachment and exculpatory evidence.").

Thus, in United States v. Bagley, 473 U.S. 667 (1985), the Court stated:

> Impeachment evidence . . . as well as exculpatory evidence, falls
> within the Brady rule.  See Giglio v. United States, 405 U.S. 150,
> 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).  Such evidence is
> "evidence favorable to an accused," Brady, 373 U.S. at 87, 83
> S.Ct. at 1196, so that, if disclosed and used effectively, it may
> make the difference between conviction and acquittal.  Cf. Napue
> v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217
> (1959) ("The jury's estimate of the truthfulness and reliability of a
> given witness may well be determinative of guilt or innocence, and
> it is upon such subtle factors as the possible interest of the witness
> in testifying falsely that a defendant's life or liberty may depend").
>
> The Court of Appeals treated impeachment evidence as
> constitutionally different from exculpatory evidence. . . This Court
> has rejected any such distinction between impeachment evidence
> and exculpatory evidence.

Id. at 676; see also Kyles v. Whitley, 514 U.S. 419, 433 (1995) ("In United States v. Bagley, the

Court disavowed any difference between exculpatory and impeachment evidence for Brady

purposes. . .").

Accordingly, pursuant to Brady, Giglio, and their progeny, Mesfun respectfully asks this

Court to compel the government to disclose all information and evidence favorable to the

defense of her case.  More particularly, but not by way of limitation, the following specific

4

Document Electronically Filed

information is hereby demanded.

(a)  All records and information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including, but not limited to, relevant "rap sheets," of each witness the prosecutor intends to call at trial;

(b)  All records and information revealing prior or subsequent misconduct, criminal acts, or bad acts of any witness the prosecutor intends to call at trial, including, without limitation, allegations of criminal conduct of which the government knows or, through reasonable diligence, should have reason to know;

(c)  All considerations or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police, or informers, to or on behalf of any witness the prosecutor intends to call at trial, or any such consideration or promises expected or hoped for by any such witness at any future time.  Such "considerations" refer to anything which arguably could be of value or use to a witness, including, but not limited to: formal or informal, direct or indirect, leniency, favorable treatment, or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative or other authority, or other parties; civil, criminal, or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness' fees, and special witness' fees; provisions of food, clothing, transportation, legal services, or other benefits; letters to anyone informing the recipient of the witness' cooperation; recommendations concerning federal aid or benefits; recommendations concerning licensing, certification, or registration; promises to take affirmative action to help the

5

Document Electronically Filed

status of the witness in a profession, business, or employment or promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of a witness; and anything else which arguably could reveal an interest, motive or bias in the witness in favor of the government or against any defendant or act as an inducement to testify or to color his testimony;

(d)  All statements – formal and informal, oral or written by the government, its agents and representatives to any person (including counsel for such person) whom the government intends to call as a witness at trial pertaining in any way to the possibility, likelihood, course, or outcome of any government action – state or federal, civil or criminal – or immigration matters against the witness or anyone related by blood or marriage to the witness.

(e)  All threats, express or implied, direct or indirect, or other coercion directed against any witness the prosecutor intends to call at trial; criminal governments, investigations, or potential governments pending or which could be brought against any such witnesses; any probationary, parole, deferred prosecution, or custodial status of any such witness; and any civil, tax court, court of claims, administrative, or other pending or potential legal dispute or transactions involving any such witness and the state or federal Government, or other which the state or federal Government has real, apparent, or perceived influence;

(f)  A list of all requests, demands, or complaints made to the government by the witness which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness for favorable governmental action in his

6

Document Electronically Filed

behalf (regardless of whether or not the government has agreed to provide any favorable
action);

(g)  Any materials not otherwise listed which reflects or evidences either the
motivation of the witness to cooperate with the government or any bias or hostility on the
part of the witness against the defendant;

(h)  The existence and identification of each occasion on which a witness has
testified before any court, grand jury, or other tribunal or body, or otherwise officially
narrated in relation to the defendant, the investigation, or the facts of this case;

(i)  Identification of all judicial proceedings in any criminal cases involving (as a
witness, unindicted co-conspirator, aider or abettor, or defendant) any person who is a
potential prosecution witness at the trial in this action;

(j)  Any statements or documents, including but not limited to grand jury
testimony and federal, state, and local tax returns, made or executed by any potential
prosecution witness at the trial in this action, which the prosecution knows or through
reasonable diligence should have reason to know is false;

(k)  The existence and identification of each occasion on which a witness who is
or was an informer, accomplice, co-conspirator, or expert has testified before any court,
grand jury, or other tribunal or body;

(l)  A copy of all medical and psychiatric reports known to the prosecutor or
which can reasonably be known to the prosecutor concerning any witness the prosecutor
intends to call at trial which may arguably affect the witness' credibility or ability to
perceive, relate or recall events;

7

Document Electronically Filed

(m)  Any written or oral statements, whether or not reduced to writing, made by any potential prosecution witness which in any way contradicts or is inconsistent with or different from other oral or written statements he has made, and any such statements made by any person, whether a witness or not, which in any way contradicts, is inconsistent with, or differs from any statement made by a prosecution witness;

(n)  Any requests prepared by the government for permission to grant immunity or leniency for any witness, whether or not such request was granted;

(o)  Any and all other records and information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the prosecutor's evidence;

(p)  The same records and information requested in items (a) through (o) with respect to each non-witness declarant whose statements are offered in evidence;

(q)  Any exculpatory information given before the Grand Jury;

(r)  The names and addresses of all persons whom the government, its agent, and representatives believe to have relevant knowledge or information with reference to the charges contained in the indictment but whom the prosecution does not propose to call as witnesses at trial;

(s)  Copies of any and all records of law enforcement agencies reflecting any intra-departmental disciplinary action taken against any law enforcement official who will testify in this proceeding;

(t)  Copies of any and all records of any law enforcement agency reflecting any commendations, awards, or recognition of any kind or requests for any kind made by any

Document Electronically Filed

of the agents or police involved in this case with respect to this case; and

(u)  Any and all records pertaining to any civil lawsuits between a defendant and

any witness the government intends to call at trial, including, without limitation, records

or statements pertaining to the instigation, conduct and disposition of such litigation.

Mesfun requests that all Brady and Giglio materials be provided immediately, as required

by this Court's Order for Discovery and Inspection.  Further, it is noted that the government has

a continuing duty to identify and disclose exculpatory material, and the defendant requests future

disclosure of favorable information as soon as the government becomes aware of it.


### POINT II

### MESFUN IS ENTITLED TO THE IMMEDIATE DISCLOSURE OF THE GOVERNMENT'S WITNESS LIST

No specific statute or rule mandates pre-trial disclosure of witness lists in non-capital

cases.  It is acknowledged, however, that it is within a district court's discretion to compel early

disclosure of a witness list from the prosecution.  See United States v. John Bernard Indust., Inc.,

589 F.2d 1353 (8th Cir. 1979); United States v. Stroop, 121 F.R.D. 269, 274 (D.N.C. 1988).  "To

obtain a government witness list, a defendant must make a specific or 'particularized' showing

that such disclosure is both material to the preparation of his defense and reasonable in light of

the circumstances."  United States v. Stroop, 121 F.R.D. at 275.

In Stroop, the court relied on five factors entitling the defendants to the prosecution's

witness list.  Id.  Most of the factors are present here:

1.      the Indictment alleges offenses occurring over a three-year period;

9

Document Electronically Filed

2.    crucial evidence will be provided from a number of witnesses from diverse backgrounds and possessing various information;

3.    a number of witnesses are within the control of the prosecution and are not openly available to the defense for investigation and interview; and

4.    most importantly, the defendant is not, and has not, been charged with an offense involving violence or a threat of violence against another person.

Id. at 275-76.

Disclosure of a witness list will neither "endanger a particular witness nor prevent the prosecution from presenting its case." Id. at 276. In this light, Mesfun's need to adequately prepare for trial and to confront what she expects to be numerous witnesses against her outweighs the government's interest in keeping the witness list a secret.

Accordingly, the Court should require the prosecution to disclose its witness list before trial.

## POINT III

## THE GOVERNMENT SHOULD DISCLOSE THE
## IDENTITY OF ALL CONFIDENTIAL INFORMANTS

To the extent the government intends to rely on information provided by confidential informants, Mesfun should be entitled to their identity. The government generally enjoys a "privilege to withhold from disclosure the identity of persons who furnish information of violation of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957). However, "[w]here the disclosure of an informant's identity or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair

Document Electronically Filed

determination of a cause," the "fundamental requirements of fairness" require that "the privilege

must give way."  Id. at 60-61.

Under Roviaro and its progeny, the Court must "balanc[e] the public interest in protecting

the flow of information against the individual's right to prepare his defense," based on "the

particular circumstances of each case, taking into consideration the crime charged, the possible

defenses, the possible significance of the informer's testimony, and other relevant factors."

Roviaro, at 60-61.  As stated above, there have not been any allegations that Mesfun threatened

violence, attempted to obstruct justice or tamper with witnesses.  Indeed, there have been no

allegations by the government that Mesfun poses a danger to the community in any way.

Therefore, the government's interest in keeping the informant's identity confidential is self-

serving and advances no legitimate governmental or investigative purpose.  In contrast, Mesfun's

interest in disclosure of the informant's identity is significant.  The confidential informants may

be a significant witness for the government or defense, and his (or her) absence may be even

more informative.

Accordingly, Mesfun respectfully requests that due process and fundamental fairness

dictates that the confidential informants' identities be disclosed to the defense.


**POINT IV**

**THE GOVERNMENT MUST BE ORDERED TO PRESERVE THE ROUGH NOTES
AND/OR REPORTS OF ALL PROSECUTION AGENTS WHO PARTICIPATED IN
THE INVESTIGATION OF THIS MATTER**


Mesfun moves this Court to compel all prosecution law enforcement agents, including

FBI and ICE agents who participated in the investigation of this matter to retain and preserve: (1)

11

Document Electronically Filed

contemporaneous rough notes taken by a prosecution agent of meetings, conversations, briefings, or interviews during the course of their investigation; (2) subsequently prepared drafts of these incidents; and (3) the final report signed by the agent. These documents must be kept regardless of whether the contents are incorporated in official records. This motion is made in order that the Court may determine whether disclosure of the requested documents is required under Brady or the Jencks Act. See United States v. Vella, 562 F.2d 275, 276 (3d Cir. 1977), cert. denied, 434 U.S. 1074 (1978) (court held that the rough interview notes of an F.B.I. agent should be kept and produced so that the trial court can determine whether the notes should be made available to the accused under Brady or the Jencks Act).

The Third Circuit has repeatedly held that the prosecution must retain and, upon motion, make available to the district court, both the rough notes and its agents' draft reports to facilitate a court's determination whether they should be produced. See United States v. Ramos, 27 F.3d 65, 68-71 (3d Cir. 1993); United States v. Ammar, 714 F.2d at 276. In any event, it has been said that the prosecution's failure to take appropriate steps to preserve evidence may, in some circumstances, constitute grounds for reversal. See Prosecution of the Virgin Islands v. Testamark, 570 F.2d 1162, 1165 (3d Cir. 1978).

In United States v. Harrison, 524 F. 2d 421 (D.C. Cir. 1975), the court held that rough, handwritten notes taken by prosecution agents were potentially discoverable and must be preserved and produced, even if the notes were not discoverable under the Jencks Act. Strongly disapproving of the FBI's practice of destroying rough notes after preparation of the witness's interview report, the court concluded that preservation of notes would not impose an intolerable burden on the FBI even if all of the information contained in the notes were also preserved in an

Document Electronically Filed

interview report.

The so-called rough-notes category also includes any notes compiled by prosecution attorneys of interviews with witnesses during the preparation of the case.  Often, the prosecution takes the position that interview notes constitute work product that does not have to be preserved.  That precise argument was presented to and squarely rejected by the United States Supreme Court in Goldberg v. United States, 425 U.S. 94, 101-02 (1976).

Goldberg, therefore, stands for the proposition that a prosecution lawyer's interview notes are not privileged from production when such production is otherwise statutorily mandated.  While Goldberg does not specifically address the Brady aspects of a prosecution lawyer's interview notes, a fair reading of Ammar fully supports the argument advanced by Mesfun that even when interview notes do not fit the literal requirements of the Jencks Act, they may be producible on the independent basis of the constitutionally based Brady doctrine.  See Ammar, 714 F.2d at 258. Absent the work-product privilege rejected in Goldberg, a prosecution lawyer's rough interview notes should not be treated any differently than an agent's rough interview notes.

Accordingly, all rough interview notes prepared by the prosecution or its agents must be disclosed to the defense.


**POINT V**


**MESFUN REQUESTS THE COURT TO MAKE AVAILABLE TO
THE DEFENSE EARLY DISCLOSURE OF JENCKS ACT
MATERIAL OF GOVERNMENT WITNESSES UNDER 18 U.S.C. § 3500**


13

Document Electronically Filed

The Jencks Act requires a court, upon motion of the defendant and after direct examination of a prosecution witness, to order the prosecution to produce to the defense "any [pretrial] statement...of the witness in [its] possession...which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b). A "statement" within the meaning of the Jencks Act is:

> (1)     a written statement made by said witness and signed or
>         otherwise adopted or approved by him; [or]
>
> (2)     a stenographic, mechanical, electrical, or other recording,
>         or
>         transcript thereof, which is a substantially verbatim recital
>         of an
>         oral statement made by said witness and recorded
>         contemporaneously with making of such oral statement.

18 U.S.C. § 3500(e).

The Court, pursuant to its inherent supervisory power to control discovery, may order the prosecution to provide Mesfun with witnesses' statements and in order to expedite the trial and avoid unnecessary delays, should request the prosecution to turn over its Jencks Act materials in advance of trial.  See, e.g., United States v. Bissell, 954 F. Supp. 841 (D.N.J. 1996) ("Although the disclosure of Jencks material prior to the conclusion of direct examination of the Prosecution's witness cannot be compelled, early disclosure to obviate trail interruptions is encouraged."); United States v. Hill, 976 F.2d 132, 140 (3d Cir. 1992) (court encouraged early disclosure of Jenks material to avoid undue delay at trial).

Trial of this matter will likely involve a number of government witnesses.  Inspection by the defense of the cumulatively extensive Jencks material relevant to the government's witnesses until after each of the numerous witnesses has testified may lengthen the trial.  In addition,

Document Electronically Filed

disclosure of Jencks material to the defense <u>after</u> the testimony of each witness will preclude pretrial resolution of admissibility issues, and perhaps hinder or truncate the defendants' investigation concerning that material.

It is respectfully submitted that the Court should exercise its discretion and invoke its inherent supervisory power to require the prosecution to make early pretrial disclosure of all Jencks material.  Such an order would fully protect Mesfun's rights to a fair trial and to the effective assistance of counsel, and would permit the defense to begin cross-examination immediately after each witness testifies.  Also, any disputed materials that need to be forwarded to the Court for an *in camera* review can be decided without delaying the trail.

Early pretrial disclosure of Jencks material will satisfy not only Mesfun's interest in a fair trial, but also the mutual interest of the Court and the public in expediting trial and avoiding delays.

### POINT VI

### MESFUN'S MOTION FOR BILL OF PARTICULARS MUST BE GRANTED IN ITS ENTIRETY

The Court enjoys broad discretion to "direct the filing of a bill of particulars" by the prosecution.  Fed.R.Crim.P. 7(f)  "[M]otions for a bill of particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to surprise at trial."  <u>United States v. Rosa</u>, 891 F.2d 1063, 1066 (3d Cir. 1989).

Moreover, the charges in the indictment must fully comply with the requirement that it set forth the essential elements and facts needed to inform the defendant of the charge, thus

Document Electronically Filed

enabling him to defend and to plead an acquittal or conviction in bar of any future prosecution

for the same offenses.  See Fed.R.Crim.P. 7(f); Hamling v. United States, 418 U.S. 87, 117

(1974); United States v. Chestnut, 533 F.2d 40, 45 (2d Cir. 1976).

Accordingly, Mesfun seeks from the government the following information via a Bill of

Particulars:

1.   Count One, ¶ 13(a):  the identity of family and friends who "helped [defendants] . . .

obtain . . .from Eritrea . . . a domestic servant ."

2.   Count One, ¶ 13(c):  the manner in which defendants "restrict[ed] E.S.'s access to the

telephone."

3.   Count One, ¶ 13(e):  the manner, times and places in which Mesfun "physically

assaulted E.S."

4.   Count One, ¶ 13(g):  the manner, times and places which defendant Joseph Mesfun

"sexually assaulted E.S."

5.   Count One, ¶ 13(l):  the identity of E.S.'s relative Mesfun is alleged to have asked to

"hide" E.S. from authorities.

6.   Count Two, ¶ 2:  the manner in which defendants "concealed, harbored, and shielded

E.S. from" immigration authorities.

7.   Count Three, ¶ 2:  the manner in which defendants "did knowingly and willfully hold

E.S. in a condition of involuntary servitude and the term of this confinement.

8.   Count Five:  the false information Mesfun allegedly asked T.S. to provide to law

enforcement.

Document Electronically Filed

9.  Count Six:  the false information Mesfun allegedly asked W.S. to provide to law enforcement.

## POINT VII

## MESFUN REQUESTS UNDER FED.R.CRIM.P. 12(b)(4) ALL EVIDENCE THE PROSECUTION INTENDS TO USE

Under Fed.R.Crim.P 12(b)(4), Mesfun requests pretrial disclosure of all evidence the prosecution intends to use at trial so that it can make the appropriate motions to suppress in advance of trial.  Rule 12(b)(4)(B) requires the prosecution, at the request of the defendant, to give notice of its intention to use evidence obtainable by the defendant under Fed.R.Crim.P. 16. It states in relevant part:  "the defendant may, in order to provide defendant an opportunity to move to suppress evidence..., request notice of the prosecution's intention to use ... any evidence which the defendant may be entitled to discover under Rule 16 ..."  See United States v. Giampa, 904 F. Supp. 235, 284 n. 41 (D.N.J. 1995).

Accordingly, Mesfun requests immediate disclosure of the following categories of documents the prosecution intends to use at trial.

1.      Written or recorded statements

Pursuant to Fed.R.Crim.P. 16 (a)(1)(A), Mesfun is entitled to his written or recorded statements.  The government has provided copies of some statements in the discovery materials. It should determine whether there are any other written or recorded statements made by Mesfun "within the possession, custody or control of the prosecution, the existence of which is known, to the attorney for the prosecution" and provide any such statements to Mesfun. Fed.R.Crim.P. 16(a)(1)(A).

Document Electronically Filed

2.      Written record of oral statements

Rule 16(a)(1)(A) also requires the government to provide Mesfun with "that portion of any written record containing the substance of any relevant oral statement" made in response to interrogation by any persons he knew to be prosecution agents.  (Emphasis added).  This request specifically includes the production of copies of the handwritten or "rough" notes of any and all of these prosecution agents, which notes contain the substance of his oral statements, as well as the relevant portions of any other written records containing oral statements discoverable under the rule.

3.      Substance of oral statements that the Government intends to offer at trial

Rule 16(a)(1)(A) also requires the government to provide the substance of any oral statements that Mesfun made to prosecution agents and that the prosecution intends to introduce at trial.  In the event that any such statements exist, Mesfun requests that the government be required to produce the substance of those statements.

4.      Mesfun's prior record

In the event that the government obtains information indicating that Mesfun or any other defendant has a criminal record, that information must be disclosed.

5.      Documents and tangible objects

Pursuant to Fed.R.Crim.P. 16 (a)(1)(A), Mesfun is entitled to inspect and copy all physical and documentary evidence that is material to the preparation of the defense or intended for use in the prosecution's case-in-chief or which was obtained from or belongs to the

18

Document Electronically Filed

defendant.  It is acknowledged that much evidence has been made available by the prosecution

for inspection and copying.  Nonetheless, emphasizing that the prosecution has a continuing

obligation to comply with this requirement, the defendant specifically request that the

prosecution be directed to disclose any Rule 16(a)(1)(C) evidence that has not yet been provided.

　　　　6.　　　Expert Witnesses

　　　　Pursuant to Fed.R.Crim.P. 16 (a)(1)(E), Mesfun has also requested a written

summary of any testimony the government intends to use under Fed.R.Evid. 702, 703 or 705

during its case-in-chief at trial.


## POINT VIII

**THE COURT SHOULD DIRECT THE PROSECUTION
TO DISCLOSE ALL ALLEGED COCONSPIRATOR
STATEMENTS AND SHOULD CONDUCT A <u>JAMES</u> HEARING
TO DETERMINE  THEIR ADMISSIBILITY**

　　　　"[A] statement by a coconspirator of a party during the course and in furtherance of the

conspiracy" is not hearsay. Fed.R.Evid. 801 (d)(2) (E).  To admit such statements, the

government must prove by a preponderance of the evidence that "(1) a conspiracy existed; (2)

the declarant and the party against whom the statement is offered were members of the

conspiracy; (3) the statement was made in course of the conspiracy; and (4) the statement was

made in furtherance of the conspiracy."  <u>United States v. McGlory</u>, 968 F. 2d 309, 333 (3d Cir.

1992), <u>cert. denied</u>, 113 S.Ct. 415 (1993).  By "counsel[ing] that the practice of admitting

conspirator hearsay statements subject to later connection 'be carefully considered and sparingly

utilized by the district courts,'" the Third Circuit has adopted this strong preference for <u>James</u>

hearings.  <u>See United States v. Gambino</u>, 926 F.2d 1355, 1360 (3d Cir.), <u>cert. denied</u>, 111 S.Ct.

Document Electronically Filed

2800 (1991) (citing United States v. Continental Group, Inc., 603 F.2d 444, 457 (3d Cir. 1979)).

To minimize the risk of undue prejudice and protect Mesfun's right to a fair trail, the Court should direct the government to disclose all alleged co-conspirator statements it has in its possession and should conduct a James hearing to determine their admissibility.


## POINT IX

### A HEARING SHOULD BE CONDUCTED TO DETERMINE THE ADMISSIBILITY AND AUDIBILITY OF ANY RECORDED CONVERSATIONS AND THE ACCURACY OF ANY TRANSCIPTS

Mesfun respectfully requests that a hearing be conducted with regard to any recordings that the prosecution intends to use at trail. There are three basic issues in this regard: Admissibility, audibility and accuracy of any transcripts of same. To date, discovery has revealed certain audiotapes of telephone calls allegedly involving Mesfun.

In the instant case, a hearing should be conducted to review the totality of the circumstances to determine whether any offered recordings are admissible. In addition, the prosecution has the burden to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of taped conversations. See United States v. Starks, 515 F.2d 112, 121 (3d Cir. 1975). This leading Third Circuit precedent expresses great concern about the admission of such recordings. As the Court stated: "Tape recordings are not readily identifiable as the original version. They are peculiarly susceptible of alteration, tampering, and selective editing." Id. at 121.

Citing United States v. McKeever, 169 F. Supp. 426, 430 (S.D.N.Y. 1958), the Starks Court listed a number of factors that must be shown in order for a proper foundation to be laid:

20

Document Electronically Filed

(1) the recording device must be capable of taping the conversation; (2) the operator of the

device was competent to operate the device; (3) the recording is authentic and correct; (4) no

changes, additions or deletion can be made in the recording; (5) the recording had been preserved

in a manner that is shown to the Court; (6) the speakers are identified; and (7) the conversation

elicited was made voluntarily and in good faith, without any kind of inducement.  United States

v. Starks, 515 F.2d at 121.

The government produced several tape recordings of conversations during discovery.  If

it intends to use any recordings or transcripts at the time of trial, Mesfun is entitled to preview

them beforehand.  It is, therefore, respectfully submitted that the Court require the government to

not only prove the admissibility of any tapes they intend to use, but also to provide a foundation

and transcript for them.


## POINT X

### THE GOVERNMENT SHOULD DISCLOSE TO ALL DEFENDANTS THE COMPLETE CONTENTS OF ANY DEFENDANT'S POST-CONSPIRACY STATEMENTS THAT MAY BE OFFERED AS EVIDENCE AT TRAIL

The government has made available to the defense extensive material containing post-

conspiracy statements by various defendants.  In general, this material consists of statements

made by Mesfun to USMS employees and supervisors.

Although post-conspiracy statements are potentially admissible at trail against defendants

who made them (Fed.R.Evid. 801 (d)(2)), because such statements were not made in the course

of and in furtherance of the alleged conspiracy, they are inadmissible against any other

defendant.  Further, the admission of such statements at a joint trail could violate a codefendant's

21

Document Electronically Filed

rights under the Confrontation Clause of the Sixth Amendment.  See Bruton v. United States,

391 U.S. 123 (1968).

Accordingly, the government should be required to notify Mesfun immediately as to

which post-conspiracy statements, if any, it will offer as evidence at trail.  Thereupon, Mesfun

will be able to assess the statements for Bruton problems and make any appropriate motions for

redaction or severance.


## POINT XI

## DISCLOSURE OF ALL 404(B) EVIDENCE IS REQUIRED

Mesfun requests that the government immediately disclose any evidence of other crimes,

wrongs, or acts which it may seek to introduce against him, pursuant to Rule 404(b) of the

Federal Rules of Evidence, so that it may move to preclude its use at trial.

This Court's Individual Rules of Practice provides for the submission of motions *in

limine*.  Thus, the prosecution should be compelled to establish the admissibility of its Rule

404(b) evidence, consistent with Third Circuit precedent, by identifying the proper purpose for

this otherwise inadmissible evidence, how Mesfun's prior conduct correlates to the purpose

identified, and how the evidence satisfies Rule 403.  Thereafter, Mesfun will formally make his

specific objections to the Court consistent with the Court's established procedures.

Document Electronically Filed

## POINT XII

## DISCLOSURE OF ANY AND ALL UNCHARGED MISCONDUCT OR BAD ACTS WHICH THE GOVERNMENT MAY SEEK TO INTRODUCE IS REQUIRED

Although the indictment in this case charges defendants with alien harboring, forced labor, involuntary servitude, obstruction and threats  the defense believes that the government may seek to introduce evidence of additional, uncharged misconduct at trial.  The defense requests that the government indicate its current intentions regarding the use of such materials, so that, if required, any arguments seeking preclusion may be timely raised.

## POINT XIII

## MESFUN REQUESTS SEVERANCE OF COUNTS

Counts One through Four contain allegations against both defendants concerning the unlawful use of "E.S." as a domestic servant.  Counts Five through Eight, on the other hand, charge only Mesfun with conduct (perhaps beyond the conspiracy) concerning the alleged concealment of the conduct charged in previous counts.  Each set of counts are clearly separate and discrete from one another.  The counts alleging violations of alien harboring, involuntary servitude, and forced labor are different in character from the counts pertaining to the violations of obstruction and threats.  Therefore, these counts are misjoined in violation of Federal Rule Criminal Procedure Rule 8(a).

Rule 8(a) permits joinder in one indictment of several charges against a single defendant only if the offenses charged are "of the same or similar character" or part of a "common scheme

23

Document Electronically Filed

or plan." Counts One through Four and Counts Five through Eight are misjoined into one indictment because they fail to meet any of these requirements.

Even if the Court were to find that the underlying offenses involving alien harboring, involuntary servitude, and forced labor were properly joined with the obstruction and threats counts under Rule 8, their severance would nonetheless be mandated under Fed.R.Crim.P. 14(a). Rule 14(a) permits severance of counts in an indictment where, as here, their joinder prejudices the defendant. See United States v. Sampson, 2004 WL 2165151 (2d Cir. Sept. 28, 2004) (prejudice to defendant warrants new trial where counts relating to 1998 drug trafficking were not severed from counts relating to 2000 drug trafficking). Moreover, while the propriety of joinder under Rule 8 is a question of law subject to full appellate review, the grant of relief from joinder under Rule 14 is entrusted to the discretion of the trial judge and is reviewable only for abuse of discretion. See United States v. Rabina, 39 F.3d 858, 861 (8th Cir. 1994).

These separate and discrete counts are joined in the same Indictment for no other purpose than to unduly prejudice the defendants. The Indictment presents two principal dangers warranting severance under Rule 14: (1) the danger that the jury will cumulate evidence, concluding that, because Mesfun was charged with numerous discrete violations of federal law, he must be guilty of something; and (2) the danger that the jury may improperly infer a criminal disposition or propensity for criminal conduct and treat the inference as evidence of Mesfun's guilt. See United States v. Kopp, No. 89-264, 1989 U.S. Dist. Lexis 15680, at *4-5 (D.N.J. Dec. 7, 1989).

24

Document Electronically Filed

As discussed above, each alleged scheme was separate and distinct in terms of time and character.  Accordingly, joinder of Counts One through Four with Counts Five through Eight is improper and prejudicial.  Failure to sever these counts would cause fundamental injustice.


## POINT XIV

### MESFUN PROVIDES NOTICE OF AN
### INSANITY DEFENSE PURSUANT TO RULE 12.2

Mesfun, pursuant to Fed.R.Crim.P. 12.2(a), hereby provides notice to the government that Mesfun may assert a defense of insanity at the time of the alleged offenses covered in the Indictment.  Although the defense anticipates relying on expert evidence to support of an insanity defense, it has not obtained any evidence at as of the date of the filing of Mesfun's pretrial motions.  Mesfun respectfully requests an opportunity to pursue this defense subsequent to the filing of Mesfun's pretrial motions.


## POINT XV

### MESFUN REQUESTS PERMISSION TO FILE ANY
### NECESSARY, ADDITIONAL MOTIONS

Mesfun respectfully requests the permission of the Court to file any necessary, additional motions that may arise during the course of discovery and at trail.  Given the complex nature of the issues present in this case, the extensive number of documents and the legal issues that may arise during continuing discovery, it is possible that additional motions may be necessary.  In the

Document Electronically Filed

interest of judicial economy and fundamental fairness, it is respectfully requested that Mesfun be

permitted to file such motions as they become appropriate.


## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Ghenet M. Mesfun respectfully requests that the

relief sought above be granted.



By:     <u>s/ Stephen Turano (ST2052)</u>

LAW OFFICES OF STEPHEN TURANO
401 Greenwich Street, Fifth Floor
New York, New York 10013
(212) 219-3572
Fax: (212) 219-8456
sturano@turanolaw.com.com

Attorney for Defendant Ghenet Mesfun


Dated: June 23, 2006